UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

GUADALUPE REYES, JR.,

Petitioner,

v.

UNITED STATES OF AMERICA,

Respondent.

CAUSE NO. 3:25cv690 DRL
3:22cr81 DRL

OPINION AND ORDER

Alfredo Reyes (aka Guadalupe Reyes, Jr.) filed a *pro se* petition to vacate or correct his sentence under 28 U.S.C. § 2255. He alleges ineffective assistance of counsel. After reviewing the petition and record, the court denies the petition and denies a certificate of appealability.

BACKGROUND

From August to November 2022, Mr. Reyes sold fentanyl pills cross-country to confidential sources and made one in-person delivery. In total, investigators seized over 1,413 grams of fentanyl from four controlled buys. On April 1, 2024, Mr. Reyes pleaded guilty, pursuant to a plea agreement, to distributing over 400 grams of a mixture and substance containing fentanyl (count 4 of the indictment). *See* 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(vi).

At sentencing, Mr. Reyes's counsel objected to a career offender classification, U.S.S.G § 4B1.1(a), claiming that one of his two prior felony convictions—his 2007 aggravated battery— was not a crime of violence. The court overruled this objection, noting "physical force" means "force capable of causing physical pain or injury," and that the categorical approach established that aggravated battery causing great bodily harm qualified as a "crime of violence." The court also overruled his objection to the drug weight.

The court calculated his offense level, beginning with base offense level 32, and adding two-level enhancements for possession of a firearm, U.S.S.G. § 2D1.1(b)(1), and for his role as an organizer or leader, U.S.S.G. § 3B1.1(c), though his status as a career offender reclassified him at level 37, U.S.S.G. § 4B1.1(b)(1). He dropped to level 34 for clearly and timely accepting responsibility. U.S.S.G. § 3E1.1. Six criminal history points would have placed him in criminal history category III, but his career offender status placed him in category VI. U.S.S.G. § 4B1.1(b). His recommended guideline range was 262 to 327 months, U.S.S.G. chap. 5A, within the statutory range of 120 months to life, 21 U.S.C. §§ 841(a)(1), (b)(1)(A).

After weighing the 18 U.S.C. § 3553(a) factors, the court sentenced Mr. Reyes to 235 months imprisonment and entered judgment on August 19, 2024. On August 11, 2025, Mr. Reyes timely filed this § 2255 petition to vacate his sentence for ineffective assistance of counsel. The government responded on November 24, 2025, and Mr. Reyes replied on January 20, 2026. The court construes his *pro se* filings liberally. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

STANDARD

In extraordinary situations, the court may vacate, set aside, or correct a prisoner's sentence. 28 U.S.C. § 2255(a); *Hays v. United States*, 397 F.3d 564, 566-67 (7th Cir. 2005). The writ of habeas corpus is secured by the United States Constitution: "The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." U.S. Const., Art. I, § 9, cl. 2. Historically, criminal defendants subject to a final conviction were entitled to habeas corpus relief only if the court that rendered the judgment lacked jurisdiction. *Ex parte Watkins*, 28 U.S. 193, 202 (1830). The writ has since been expanded to provide prisoners relief from various violations of the Constitution, laws, or treaties of the

2

United States. 28 U.S.C. § 2255(a); *Danforth v. Minnesota*, 552 U.S. 264, 272 (2008); *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). It is not a substitute for direct appeal. *Doe v. United States*, 51 F.3d 693, 698 (7th Cir. 1995).

When reviewing a § 2255 petition, the court examines the petition and the entire record. The court will hold an evidentiary hearing when the petitioner alleges facts that, if proven, would entitle him to relief. *Torres-Chavez v. United States*, 828 F.3d 582, 586 (7th Cir. 2016); *see also* 28 U.S.C. § 2255(b). Allegations that prove merely "vague, conclusory, or palpably incredible" rather than detailed and specific will not suffice. *Machibroda v. United States*, 368 U.S. 487, 495 (1962). Likewise, when the petition and records conclusively show that the petitioner is not entitled to relief, the court need not hold an evidentiary hearing. *Boulb v. United States*, 818 F.3d 334, 339 (7th Cir. 2016). That is the case here.

## DISCUSSION

The Sixth Amendment to the United States Constitution guarantees a defendant the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To show a violation of this right, a defendant must establish that (1) his counsel's representation "fell below an objective standard of reasonableness," and (2) "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 688, 694. "A defendant's failure to satisfy either prong is fatal to his claim." *Ebbole v. United States*, 8 F.3d 530, 533 (7th Cir. 1993).

The law "presume[s] that counsel [was] effective, and a defendant bears a heavy burden in making out a winning claim based on ineffective assistance of counsel." *United States v. Farr*, 297 F.3d 651, 658 (7th Cir. 2002). An attorney's representation "need not be perfect, indeed not

even very good, to be constitutionally adequate." *Delatorre v. United States*, 847 F.3d 837, 845 (7th Cir. 2017) (citation omitted).

Mr. Reyes alleges ineffective assistance of counsel in connection with both his plea and sentencing. He claims that at the time of his plea agreement his counsel neglected to tell him the career offender enhancement would apply, which prejudiced him because, had he known, he would have chosen to proceed to trial. At sentencing, he asserts that his counsel failed to make alternative arguments on the career offender enhancement and failed to object to the firearm enhancement, prejudicing him because his guideline sentence range increased. The government argues no significant error occurred that requires post-conviction relief, and that Mr. Reyes's argument merely reflects discontent with his sentence.

A. *Plea.*

Mr. Reyes argues his plea was not knowing and voluntary because his counsel failed to inform him of the § 4B1.1(b)(1) career offender enhancement and thereby presented a gross mischaracterization of his likely sentence. The government responds that a mischaracterization of the potential guideline range is not a valid basis to withdraw from a plea agreement or find counsel ineffective, and that his plea agreement and plea colloquy rebut his current assertions of deficient performance and prejudice.

The *Strickland* two-part test applies to "challenges to guilty pleas based on ineffective assistance of counsel," *Hill v. Lockhart*, 474 U.S. 52, 58 (1985), though in a refined way, *United States v. Smith*, 989 F.3d 575, 581 (7th Cir. 2021). At the plea stage, the performance prong remains largely unchanged, as the petitioner "must allege that he entered the plea agreement based on advice of counsel that fell below constitutional standards." *Hurlow v. United States*, 726 F.3d 958,

4

966-67 (7th Cir. 2013). When a defendant claims that his counsel's ineffective performance caused him to accept a plea, "the defendant can show prejudice by demonstrating a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Lee v. United States*, 582 U.S. 357, 364-65 (2017) (quotations omitted); *Hill*, 474 U.S. at 59. To meet this burden, a defendant has to offer more than *post hoc* assertions "about how he would have pleaded but for his attorney's deficiencies." *Lee*, 582 U.S. at 369. The court "instead look[s] to contemporaneous evidence to substantiate a defendant's expressed preferences." *Id.*; *United States v. Karagianis*, 142 F.4th 980, 987 (7th Cir. 2025).

In the plea bargaining context, a defendant can establish deficient performance, the first *Strickland* prong, by showing "that counsel did not attempt to learn the facts of the case and failed to make a good-faith estimate of a likely sentence." *United States v. Cieslowski*, 410 F.3d 353, 358 (7th Cir. 2005); *see also id.* at 359 (quoting *United States v. Barnes*, 83 F.3d 934, 940 (7th Cir. 1996) (counsel's performance was deficient if he "did not make a good-faith effort to discover the facts relevant to his sentencing, to analyze those facts in terms of the applicable legal principles and to discuss that analysis with [the defendant]"). This is a "stringent" standard. *Id.* Even a "gross mischaracterization of the sentencing consequences of a plea" is not alone proof of deficiency, *id.* (citation omitted), but it can be significant enough to warrant relief, *see, e.g., Julian v. Bartley*, 495 F.3d 487, 499 (7th Cir. 2007) (finding prejudice when petitioner stated under oath he would not have gone to trial but for the miscalculation, when he altered course just after receiving the erroneous information, and when the miscalculation grossly understated the risk of going to trial) (citing *Moore v. Bryant*, 348 F.3d 238, 242-43 (7th Cir. 2003)).

Suppose, for the moment, that trial counsel neglected to tell Mr. Reyes about the possibility that he might be classified as a career offender under the sentencing guidelines; even so, he cannot establish prejudice. The record offers no evidence, before, during, or even soon after the plea, substantiating his new claim that he would not have pleaded guilty had he known about a sentencing guideline that produced a higher advisory range. *See Lee*, 582 U.S. at 369. The available evidence—the plea agreement and plea colloquy—instead shows he agreed to plead guilty knowing his sentence could vary from the possibilities he discussed with counsel and could mean a life sentence (the statutory maximum).

Statements at a plea hearing are made under oath, so the court is "generally justified in discrediting the proffered reasons for the motion . . . and holding the defendant to his admissions at the plea colloquy." *United States v. Patterson*, 576 F.3d 431, 437 (7th Cir. 2009) (quotations and brackets omitted). Mr. Reyes's alleged ignorance of the potential sentencing range is "belied by his own statements at the change of plea hearing, which are presumed truthful." *Bridgeman v. United States*, 229 F.3d 589, 592 (7th Cir. 2000).

In his plea agreement, Mr. Reyes acknowledged that a violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(vi) carries with it a "maximum possible penalty . . . [of] a term of imprisonment not to exceed life" [86-1 ¶ 9(c)]. He reiterates his understanding of the statutory maximum in his reply brief even now. In the plea agreement, he acknowledged that the court would use the sentencing guidelines to calculate a range for sentencing—including "the adjusted offense level, the relevant circumstances in the case, the criminal history points and category," "career offender status," and "possible departures from the application of the U.S. Sentencing Guidelines"—but that the

6

guidelines were "advisory only, and that the specific sentence to be imposed upon [him] will be determined by the judge" [86-1 ¶ 9(d)].

At his change of plea hearing, Mr. Reyes confirmed he understood the plea agreement [117 Tr. 15-16]. He acknowledged that he was "fully satisfied" with the job his counsel performed for him [*id.* 12, 15]. The court explained to him how sentencing works and informed him that the court "may reach . . . a sentence [he did] not discuss[] with [his] counsel as a possibility" [*id.* 24]. Mr. Reyes acknowledged the potential penalties set by statute, including that the court could sentence him to a maximum of life imprisonment [*id.* 22]. He said he understood that his sentence could be longer than he expected and that such a sentence would not enable him to withdraw his plea or from his plea agreement [*id.* 26-27]. Mr. Reyes testified under oath that no one had made any promises or predictions to him as to what sentence he would receive in the case [*id.* 29], that he understood all these conditions, and that he still wanted to plead guilty [*id.* 31].

Mr. Reyes argues in reply that his plea hearing statements were the product of being misinformed by his trial counsel because he was unaware § 4B1.1(b)(1) would apply. Though certain statements made at a plea hearing may be impacted by a counsel's constitutionally ineffective actions, *Hurlow*, 726 F.3d at 967-68, a court's colloquy can "ameliorate the adverse impact of [] counsel's misinformation." *Hutchings v. United States*, 618 F.3d 693, 699 (7th Cir. 2010) (quoting *Moore*, 348 F.3d at 242-43).

The plea agreement and plea colloquy provide the only real contemporaneous evidence as to whether Mr. Reyes would still have pleaded guilty knowing that his sentence could variably run the gamut up to life, that his sentence might be longer than he expected, that his sentence might exceed any possibility that he had discussed with counsel, that the court would evaluate a

7

career offender status, and that he was proceeding without any promises or predictions as to what his sentence might be. On this habeas record, the court doesn't even have a sworn statement to counter or couch these prior signed or sworn statements (not even in reply after this point was raised by the government), nor any history of plea negotiations, nor any evidence that a likelihood of a lengthier sentence would change the rationale for pursuing a guilty plea. The record offers no evidence before or contemporaneous to the plea, much less evidence later, that he would not have pleaded guilty had he known about a sentencing guideline that produced a higher advisory range. He took nearly the full year to raise this subject for the first time.

On this record, he "cannot now be heard to complain that he would not have pleaded guilty if he had known his sentence would be more severe than his lawyer predicted." *Bethel v. United States*, 458 F.3d 711, 718 (7th Cir. 2006) (cleaned up). His "broad and repeated concessions that he understood his sentence could be more severe than predicted and that he was not relying on a particular sentence in signing the plea agreement and pleading guilty" contradicts his assertions that the application of the enhancement would have been a decisive factor in his decision to plead guilty. *Id.* at 719. Unable to establish prejudice, and based merely on a conclusion that the record belies, he fails to offer facts that, if proven, would entitle him to relief. As such, no hearing is necessary, and his petition is denied.

B. *Sentencing.*

Mr. Reyes first argues his counsel performed deficiently at sentencing by failing to argue that a predicate conviction should not have counted for the career offender enhancement because it occurred fourteen years and eight months beforehand, thus close to the fifteen-year limit. *See* U.S.S.G. §§ 4A1.2(e)(1), 4B1.1(a). The government responds that this alternative argument would

have been frivolous, and that counsel effectively presented this requested mitigating argument when addressing the § 3553(a) factors.

The law generally declines to "second-guess [the] strategic choices" of attorneys. *United States v. Pergler*, 233 F.3d 1005, 1009 (7th Cir. 2000). Lawyers are not required to make every argument available; they "cannot be faulted for eschewing the proverbial kitchen sink and instead focusing on arguments with better odds." *Lickers v. United States*, 98 F.4th 847, 857 (7th Cir. 2024). "There is a strong presumption that counsel's attention to certain issues to the exclusion of others reflects . . . tactics rather than sheer neglect." *Harrington v. Richter*, 562 U.S. 86, 109 (2011) (citation and quotations omitted). Trial counsel has no duty to raise a meritless or frivolous argument. *See Northern v. Boatwright*, 594 F.3d 555, 561 (7th Cir. 2010) (An attorney is "[o]bviously" not deficient for "failing to lodge a meritless objection.").

Trial counsel cannot be faulted for choosing to forgo the meritless argument about the timeframe of his previous offense. The court must calculate the guideline range accurately, and being "close" to the mark of aging out a prior offense isn't the same as hitting the mark. Even Mr. Reyes acknowledges that "technically" he qualifies as a career offender [112-1 at 8]. Upon the court's ruling that his former aggravated battery felony qualified as a crime of violence, *see United States v. Lynn*, 851 F.3d 786, 797 (7th Cir. 2017), and given that his prior felony conviction occurred within the last fifteen years, the career offender enhancement categorically applied, regardless of any mitigating factors that the court could and did consider under § 3553(a) in reaching a near-20-year sentence, albeit below the advisory range. In short, Mr. Reyes cannot show his trial counsel's deficient performance, much less prejudice in the outcome.

9

Mr. Reyes asserts that if the argument to avoid the career offender enhancement failed, his counsel should have moved for a downward departure. The concept of departures was rendered obsolete when the guidelines became advisory under *United States v. Booker*, 543 U.S. 220 (2005), and now departures constitute merely "analogy," *United States v. Miranda*, 505 F.3d 785, 792 (7th Cir. 2007). The court construes the request for a downward departure liberally, *see Erickson*, 551 U.S. at 94—namely, that Mr. Reyes wanted his counsel to raise mitigating arguments and request a sentence below the guideline range. His counsel did just that. His counsel emphasized the age of the prior convictions at sentencing, noting that the "aggravated assault was in 2002[,] . . . a long time ago" [118 Tr. 47] and that there have been "14 years with no . . . contact with law enforcement" [*id.* 48]. He concluded that "[g]iven the significant amount of time between his last contact with the legal system and the present and given the circumstances here . . . a harsh sentence is not necessary to deter Mr. Reyes" [*id.*]. He recommended the statutory minimum sentence of 120 months [*id.* 49], below the guideline range.

Mr. Reyes also raises two other arguments he claims his counsel should have brought at sentencing: first, that one of his previous convictions was for marijuana, which many states have legalized, and second, that he has "great rehabilitative potential" because he had gone almost fifteen years without an offense, was employed at the time he was arrested, and participated in drug programs. The strong presumption is that counsel's decision to make some arguments and decline others reflects tactics, not indicative of deficient assistance. *See Harrington*, 562 U.S. at 109. Mr. Reyes must show that the decision not to bring these arguments falls below the objective standard of reasonableness.

10

Both arguments are dubious. Distributing marijuana remains a federal crime, *see* 21 U.S.C. § 841(a)(1), and Mr. Reyes's felony conviction for such conduct must factor into the guideline calculation, U.S.S.G. § 4A1.2. Though counsel could have tried a mitigating argument that marijuana laws in some states have changed, it would not have moved the needle when Mr. Reyes had a significant criminal history—the court imposing a serious sentence for a five-time felon, violent career offender, and illegal alien (with eight aliases) who reentered the United States to graduate to illegal possession of firearms and months-long interstate distribution of fentanyl should come as no surprise.

On drug treatment, Mr. Reyes presents no evidence of treatment he received before incarceration, and the presentence report noted that he had no known treatment history [95 ¶ 123]. He had the ability to participate in the report's preparation. He mentions in his reply that he participated in recidivism reduction programs while incarcerated, but this cannot retroactively inform the court that he had great potential at the time of his sentencing or justify a resentencing. To the extent he is discussing his rehabilitation while imprisoned, such argument isn't pertinent to a § 2255 petition. The court already considered appropriate mitigating factors at sentencing. He cannot show deficient performance or prejudice for these points.

Last, Mr. Reyes asserts that trial counsel's performance was deficient for failing to object to the two-level firearm possession enhancement. He argues the § 2D1.1(b)(1) enhancement should not have applied because his gun was not literally present at the scene of his drug distribution, and he never intended to use the firearm in illegal activity. The government responds that Mr. Reyes misunderstands the nature of the government's burden for a weapon enhancement under § 2D1.1(b)(1), which does not require actual possession.

To apply the firearm enhancement, the government must "prove by a preponderance of the evidence that the defendant possessed the firearm." *United States v. Rea*, 621 F.3d 595, 606 (7th Cir. 2010). Constructive possession is sufficient, as it isn't required that the defendant actually held the weapon during the offense, only that the defendant "had the power and the intention to exercise dominion or control of the firearm." *United States v. Thomas*, 294 F.3d 899, 906 (7th Cir. 2002). If the government can show possession, the burden then shifts to the defendant to show that it was "clearly improbable" that a connection existed between the firearm and the drug offense. *Rea*, 621 F.3d at 606; *see also* U.S.S.G. § 2D1.1 app. n.11(A) (providing "clearly improbable" standard). This is a significant burden, as the enhancement applies if the gun is in "close proximity" to drugs or paraphernalia, *Rea*, 621 F.3d at 607, or if the person exercised control over it "during relevant conduct," *United States v. Zehm*, 217 F.3d 506, 516 (7th Cir. 2000).

Law enforcement found the firearm in Mr. Reyes's bedroom under his bed [95 ¶ 17]. Mr. Reyes acknowledges this [112-1 at 6], effectively conceding that he had constructive possession—power and intention to exercise dominion or control—over the gun. The burden would have been on Mr. Reyes to show it was "clearly improbable" that a connection existed between the firearm and the drug offense. Agents also located in his apartment a baggie with methamphetamine residue, and what appeared to be drug ledgers [95 ¶ 17]. The court noted that he illegally kept a firearm to protect his stash of drugs. It was not clearly improbable that a connection existed between the gun and the drug offense. Counsel thus retained discretion to decline the argument against the firearm enhancement.

But Mr. Reyes could not show prejudice anyway. Regardless of whether the firearm enhancement applied, the career offender enhancement reclassified him to offense level 37, so

even a successful objection to the firearm enhancement would not have altered his advisory guideline range.

Accordingly, this petition begins and ends with little more than a conclusory perspective that (1) Mr. Reyes would not have pleaded guilty but for information about the career offender enhancement, and (2) trial counsel was ineffective at sentencing—perspectives not borne out by any real features of the record. He fails to offer facts that, if proven, would entitle him to relief. As such, no hearing is necessary, and his petition is denied. *See Anderson v. United States*, 981 F.3d 565, 578 (7th Cir. 2020).

C.  *Certificate of Appealability.*

Under Rule 11 of the Rules Governing Section 2255 Proceedings, the court when entering a final order adverse to the applicant must also consider whether to grant or deny a certificate of appealability. If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2). A certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); Rule 11 of Rules Governing Section 2255 Cases. The substantial showing standard is met when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quotations omitted). Based on the assertions Mr. Reyes has made in this petition, including *post hoc* assertions that contradict his sworn statements before the court, reasonable jurists could not debate the conclusions today. The court thus denies a certificate of appealability.

CONCLUSION

For these reasons, the court DENIES the petition to vacate under 28 U.S.C. § 2255 [112] and DENIES a certificate of appealability. This order terminates the civil case.

SO ORDERED.

August 5, 2026                                   s/ Damon R. Leichty
                                                 Judge, United States District Court

14